Eason *v.* The State.

## EASON *v.* THE STATE.

1. CRIMINAL LAW. *Practice. When bill of exception must be signed.* In criminal as well as in civil cases the bill of exceptions must be made up and signed at the term at which the trial takes place, in order to secure certainty as to the facts which occurred at the trial.

2. SAME. *Jury. Judge may designate.* The responsibility of selecting jurors is imposed upon the court, and the duty thus imposed may be discharged either by designating the persons, and directing the sheriff to summon them, or the court may direct the sheriff to summon a panel and then adopt the panel as jurors.

3. SAME. *Witness. Introduced by State. State not compelled to examine him.* If the State summon a witness, and refuse to introduce him on the trial, the court cannot compel his introduction, as the law officer of the State is presumed to know his duty, and can make out his case by any testimony he sees fit to introduce, and if the defendant then introduce the witness, he is certainly not prejudiced, and cannot assign the action of the State in refusing to introduce the witness, as error.

4. SAME. *Murder. Finding of one jury of guilty with mitigating circumstances no bar to a different finding by a subsequent jury. When.* The

finding by one jury in a murder case of "guilty with mitigating circumstances," where the court disregards the finding, and sentences the prisoner to death, does not bar a different jury in a subsequent trial from finding a verdict of "guilty" without mitigation.

FROM SHELBY.

Appeal from the Criminal Court. Jno. R. Flippin, Judge.

J. D. Adams for defendant.

Attorney-General Heiskell for the State.

Freeman, J., delivered the opinion of the court.

The defendant was convicted in the criminal court of Memphis of the murder of one Ed. Lyles. The case was before us at last term, reversed, and sent back for a new trial. He has again been convicted of murder in the first degree, the jury making no recommendation for mercy to the court, as in the former verdict.

Several questions are urged in behalf of the prisoner at the bar for reversal of the judgment. It appears from the record that the prisoner was convicted in June, being the May Term of the court, 1872, and regularly sentenced to be hung. After motions in arrest of judgment and for new trial had been made and overruled by the court, he prayed an appeal to this court at the same term, which was granted. No bill of exceptions was made up or tendered at this term, but the court adjourned on the 20th of July,

to meet on Friday, September 13, for the purpose of singing the minutes, the next term commencing the following Monday. At this adjournment the prisoner's counsel announced that they would take no appeal, and no bill of exceptions would be presented. The record shows that on the 13th of September, when the court met to sign the minutes, a paper was presented to the court by defendant's counsel, setting forth some of the points in the paper that was afterwards signed, and which appears in the record as a bill of exceptions. The court remarked that he would not then sign the paper, that the Attorney General was absent; if he were here, and it could be agreed upon, the court would sign it. Upon the Attorney General's return he refused to sign any paper, for the reasons stated in a previous part of the bill of exceptions, that is, that the paper was not presented for signature by the court until after the term had ended, as well as for other grounds not stated. In fact, the paper was not signed until the 17th of March, 1873—during the January Term of the court, and then under objection by the Attorney General.

Under a well settled rule, one based in the soundest reasons of public policy, this court has uniformly held in civil cases that a bill of exceptions must be made up and signed at the time at which the trial takes place.

This rule is necessary in order to secure certainty as to the facts which occurred at the trial, and. ought not to be departed from, and we can see no reason why the same reasons do not require it to be en-

forced in criminal as well as civil cases.    While an-
nouncing this as the rule for the action of the inferior
courts—one which . we shall in the future insist on
being observed, inasmuch as this case involves the life
of the prisoner, and, as far as we remember, had
never been applied in any decision of this court to
criminal cases—in tenderness to human life we will
look into the paper in the record for this time, and
see if there is anything in it that can avail the
prisoner before us.

The first matter presented is, that on the trial of
the case a special jury of one hundred men was asked
by the defendant, whereupon the court ordered the
sheriff to summon a special venire of one hundred
men as asked for, at the same time giving to the
sheriff the names of one hundred citizens, and order-
ing the sheriff to summon them as such, and tender
them alone as such venire from which to select a jury
to try this case, to which the defendant objected.    In
the selection of the jury from this number the defend-
ant exhausted his thirty-five challenges, and asked for
the thirty-sixth challenge, which was refused by the
court.

Was this error, is the first question.

In the case of *Cox* v. *Hunt*, decided at last term
of this court, it was settled, upon a full review of
the provisions of the Code on the subject, and, as we
think, on sound principles of public policy, that "the
responsibility is imposed upon the court in the selec-
tion of all jurors, except the regular panel designated
by the County Court, and the duty thus imposed may

be discharged, either by designating the persons, and directing the sheriff to summon them, or he may direct the sheriff to summon a panel, and then adopt the panel as jurors."

We see no cause to change this view of the question. On the contrary, we think it far better calculated to attain the result which is the object of law— a fair and impartial, and, also, upright, intelligent, and independent jury to decide upon the rights of the people of the State and of the prisoner—than to leave them to be selected by the sheriff at his discretion. A court is less liable to be influenced by considerations of feeling, or of popular prejudice in this matter than a sheriff, and is as competent to designate good and true men to perform this responsible duty as is the sheriff, who acts as its officer and agent.

There is no error in this.

The next question presented is, that where the Attorney General called his list of witnesses for the State, he was asked by the counsel for the prisoner whether he would examine. one Frank P. Arnold, Jr. He replied, that he might or might not do so, but probably he had better be sworn and put under the rule. Arnold, it seems, was the only witness who was present and saw the homicide for which the defendant was put on his trial.

The State introduced all its evidence in chief excepting said Arnold, and announced that the case was closed, when the defendant asked the court to require the State to introduce Arnold for cross-examination by defendant, which was refused by the court. It ap-

pears, however, that said witness was then introduced and fully examined on the part of the defendant. This has been urged with much earnestness for reversal of this case.

We have presented in favor of the view of counsel of defendant several cases cited, one of *Hunt* v. *The People,* decided by the Supreme Court of Michigan, in which an opinion is given by Mr. Justice Campbell that seems to maintain the principle as contended for. But, on careful reflection on the question, we do not approve the view thus taken

We can see no reason why a court should compel the State to make out its case by the introduction of any particular witness, nor require that all the witnesses present at a supposed criminal transaction should be put upon the witness stand. If it be important to the proper defense of the defendant, he can always have the witness in his favor, and, even under our liberal statute, may have his deposition taken in the same manner as in civil cases, on notice to Attorney General—Code, sec. 5387—and read in his favor on the trial. The real object of investigations in court is to ascertain the truth of the case, in order that the judgment of the law may be had on the facts. It can make but little difference to the attainment of this end whether the witness be called by the State or the defendant. If the State shall fail to introduce a material witness who has knowledge of the facts, the defendant, as we have said, may always introduce him, and thus get the facts known by him before the jury, and if he knew the facts

Eason v. The State.

that would make against the prisoner, the failure of the State will work for his advantage by lessening the proof against him. We feel satisfied that something should be left to the sound discretion of the officers of the State in their responsible positions, and that they can be safely trusted with the discretion as to whether a witness should be put on the stand or not. We are, also, well satisfied that in view of his official responsibility, no prosecuting officer, without a substantial reason for it, is likely to withhold testimony that will tend to develop the facts favorable to a conviction in a criminal prosecution; and we are equally well satisfied, that with the aid of counsel, either retained or appointed by the court, no prisoner is likely to neglect introducing a witness who will be able to develop facts favorable to his acquittal, and with the facilities furnished by our law for procuring the testimony of witnesses in his behalf, no one charged with crime is likely to suffer by the adoption of the rule we have indicated.

As a matter of course, if there should appear that any advantage had been taken of the prisoner by preventing his access to testimony favorable to his case, or any trick or fraud whatever should appear in the case, it would be the duty of the court promptly to compel the production of any testimony thus withheld, and of this court to reverse on failure of the court below to do so.

But nothing of the kind appears in this case, on the contrary, the witness was introduced by the defendant, and thus he got the benefit of all he could

be made to depose in his favor. This would amount to a waiver of the objection, even if it had been well taken.

It is last insisted, that inasmuch as a former jury who had tried the prisoner returned a verdict of guilty with mitigating circumstances, the present jury were bound so to return, in the event they found a verdict of guilty, and it is claimed the court erred in not giving this instruction as requested.

We cannot assent to this. The recommendation of the jury, or finding mitigating circumstances in the case, is not a part of the judgment or the law in the case, but is purely a matter of discretion, which they may exercise or not. Even when such finding is presented to the court it is not binding, but may be disregarded, as it was done by the court below in this case on the former trial.

We see no error in this refusal of the Criminal Judge.

Reluctant as we must always feel to take the life of a human being, yet, after a careful examination of this case, we are compelled, in obedience to the law, which we are sworn to enforce, to affirm the judgment of the Criminal Court.

Let the prisoner be remanded to jail.